Case: 1:22−mj−00148
Assigned To : Faruqui, Zia M.
Assign. Date : 6/28/2022
Description: Complaint W/ Arrest Warrant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No.** |
| **v.** | : | |
| | : | **Filed Under Seal** |
| JOSEPH TAMJONG, | : | |
| | : | |
| Defendant. | : | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

### I.    IDENTITY OF THE AFFIANT

I, Kathleen Graham, being duly sworn, state:

1.    I am a Special Agent of the Federal Bureau of Investigation ("FBI"). From February 2020 to the present, I have been assigned to a white-collar crime squad at the FBI's Washington Field Office in the District of Columbia, specifically focused on the investigation of health care fraud and other health care crimes. I have received training in general law enforcement and criminal investigations, and I have attended training programs focused on health care crimes. I have investigated allegations of health care fraud, false statements, identity theft, mail fraud, and wire fraud.

2.    I am assigned to this investigation and my involvement has included, but is not limited to, interviewing witnesses, reviewing Medicaid billing claims and medical records associated with Medicaid recipients, as well as conducting surveillance.

### II.    REASON FOR AFFIDAVIT

3.    This affidavit is made in support of a criminal complaint and arrest warrant charging JOSEPH TAMJONG ("TAMJONG") with violations of 18 U.S.C. § 1347 (Health Care Fraud) and 18 U.S.C. § 1035 (Health Care False Statements).

1

4.      TAMJONG currently resides in Lanham, Maryland. Since approximately December 2014 through the present, TAMJONG has been employed as a Personal Care Aid ("PCA") and/or a Participant-Directed Worker ("PDW") to provide personal care services to residents of the District of Columbia who receive Medicaid ("Medicaid beneficiaries"). A government investigation has shown that TAMJONG has caused false claims to be submitted to Medicaid. The claims can be broadly categorized as follows: (1) claims purporting that TAMJONG provided services in excess of sixteen (16) hours in a given day; (2) claims purporting that TAMJONG provided services to multiple beneficiaries in overlapping hours; (3) claims purporting that TAMJONG provided services to Medicaid beneficiaries to whom he provided no care at all; and (4) claims purporting that TAMJONG provided services to Medicaid beneficiaries while he was traveling outside the country.

5.      Based on a review of Medicaid billing claims for a period of approximately 87 months, between about December 2014 through about February 2022, Medicaid issued payments totaling approximately $733,405 for 143,954 units (or 35,988.50 hours) of personal care services that TAMJONG purportedly provided as a PCA or PDW for up to 17 beneficiaries.

6.      The facts and information contained in this affidavit are based on my personal knowledge of the investigation, the observations and reports of other law enforcement officers, and evidence gathered during the investigation. This affidavit does not include every fact and matter observed by me or known to the government relating to the subject matter of this investigation. Instead, this affidavit contains only those facts necessary to establish that probable cause exists.

### III.     OVERVIEW OF THE DISTRICT OF COLUMBIA MEDICAID PROGRAM AND PERSONAL CARE SERVICES

7.      Medicaid is a health insurance program established by Congress under Title XIX of the Social Security Act of 1965. Medicaid provides health insurance coverage to residents of the District of Columbia whose incomes are below a certain financial threshold as measured against the poverty line. The federal government provides funding for 70 to 80 percent of Medicaid; the District of Columbia provides the remaining funds. Since October 1, 2008, D.C.'s Medicaid program has been administered by the D.C. Department of Health Care Finance ("DHCF").

8.      Personal care aide ("PCA") services are intended to assist Medicaid beneficiaries with performing activities of daily living, known as "ADLs." ADLs include the ability to get in and out of bed, bathe, dress, eat, and engage in toileting.

9.      A Medicaid beneficiary seeking PCA services for the first time must submit a request for a PCA Service Authorization to DHCF and accompany the request with a physician or Advanced Practice Registered Nurse's written order for such services.  If DHCF then determines, during a face-to-face assessment with the beneficiary, that the beneficiary needs assistance with ADLs, DHCF issues a PCA Service Authorization that specifies the amount, duration, and scope of PCA services authorized to be provided to the beneficiary.

10.     Historically, home health agencies ("HHAs") registered to do business in the District of Columbia have provided personal care services to eligible Medicaid beneficiaries. HHAs employ PCAs to provide such services, typically in a beneficiary's home. Under the Medicaid rules, a PCA must meet certain qualifications, including: (a) obtaining or having a home health aide certification; (b) providing evidence of obtaining certification in cardiopulmonary

resuscitation ("CPR") and first aid; (c) demonstrating that the PCA is free from communicable disease; and (d) passing a criminal background check.

11.     Each PCA is issued a unique, ten-digit National Provider Index ("NPI") number, which an HHA uses to bill Medicaid for services rendered to a beneficiary. PCAs must document the provided care on a timesheet that is submitted to the HHA. The timesheet is supposed to reflect accurately the date the PCA provided services, the itemized services rendered, and the amount of time spent providing services. Timesheets are supposed to be signed each day by both the beneficiary and the PCA after all work is completed. However, a single timesheet can contain a full week of services.

12.     In 2016, the D.C. Department of Health Care Finance established an additional way that Medicaid beneficiaries can receive personal care services. The *Services My Way* ("SMW") program allows eligible Medicaid beneficiaries to become the common law employer to a "participant-directed worker," who is employed by the beneficiary to provide PCA services to the beneficiary. To be eligible for such services, a beneficiary must be in receipt of a service authorization for personal care aide services from DHCF or its agent specifying the amount, duration, and scope of services authorized to be provided to the beneficiary.

13.     As of February 2021, the *Service My Way* program had over 1,100 participants/beneficiaries.  All PDWs must: (1) be at least 18 years of age; (2) pass a criminal background check; (3) receive customized training provided by the Medicaid beneficiary or the beneficiary's authorized representative that is related to the beneficiary's functional needs as outlined in the Person-Centered Service Plan ("PCSP"); (4) be able and willing to perform the service-related responsibilities set forth in the PCSP; and (5) be certified in CPR and First Aid through an in-person training course.

14.     Consumer Direct Care Network District of Columbia is the vendor that supports *Services My Way* participants with things like processing employee timesheets, withholding payroll taxes, processing payroll, and submitting claims to Medicaid.  Consumer Direct DC paper timesheets include areas to fill in the following information:

- PDW Name and Employee ID Number;
- Participant/Beneficiary Name and ID Number;
- Service Date, Time In, Time Out, Tasks Completed.
- PDW Signature
- Participant/Beneficiary Signature

Next to the signature section, the timesheets contain the following printed language: "I certify that the hours, services, and tasks indicated above were provided to the Participant by the PDW as recorded. The Participant was not in a hospital, nursing home, or institution. *False information or misrepresentation constitutes Medicaid Fraud and may result in dismissal from the program and/or criminal prosecution*." (Emphasis added.)[1]

15.     As outlined in Section 6.3 ("Interrelationship of Providers") of the D.C. Medicaid MMIS Provider Billing Manual, "Providers are prohibited from referring or soliciting beneficiaries directly or indirectly to other providers for financial consideration. Providers are also prohibited from soliciting, receiving, or offering kickbacks; payments, gifts, bribes, or rebates for purchasing, leasing, ordering, arranging for, recommending purchasing, leasing; ordering for goods, facilities, or items for which payment is made through the D.C. Medicaid Program."

---

[1] In December 2016, Congress passed the 21st Century Cures Act requiring state Medicaid programs to implement an electronic visit verification ("EVV") system for some home services, including personal care services. The Act requires that an EVV system capture six data elements: member receiving the services, caregiver providing the service, type of service, location of the service delivery, date of the service, and time the service begins and ends. The Act required all state Medicaid programs to implement an EVV system to verify personal care services by January 1, 2020, but the Department of Health and Human Services has allowed for some flexibility with the deadline if states showed good faith efforts at compliance. In October 2021, DHCF indicated that it would deny all PCA service claims with dates of service on or after December 1, 2021, that cannot be matched with corresponding EVV information.

16.     HHAs and Consumer Direct DC have used timesheets to determine and justify the services for which HHAs and Consumer Direct DC file reimbursement claims with Medicaid.[2] Those claims must provide certain information, such as the name of the Medicaid beneficiary, the date of service, the type of service, the amount of time a service was provided, and the amount of money being sought by the HHA or Consumer Direct DC as payment from Medicaid. Medicaid only pays for services that are medically reasonable and necessary, and that are actually provided as claimed.

## IV.     FACTS SUPPORTING PROBABLE CAUSE

17.     As noted above, TAMJONG defrauded the Medicaid program by submitting or causing to be submitted timesheets to HHAs and Consumer Direct DC for personal care aide services that he did not provide. The HHAs and Consumer Direct DC subsequently sought and received payments from D.C. Medicaid based on the fraudulent timesheets, and in turn paid TAMJONG.

18.     During the course of the investigation, law enforcement obtained, inter alia, TAMJONG's payroll records, HHA employment records, patient files, and D.C. Medicaid billing claims associated with PCA services that TAMJONG purportedly provided. Law enforcement also interviewed witnesses and conducted surveillance on TAMJONG during hours that he purported to provide PCA services.

---

[2] Effective February 13, 2022, Consumer Direct DC generally will no longer accept paper timesheets for PDW services. Instead, the services are documented through Consumer Direct's Electronic Visit Verification program, which involves the PDW entering dates and times of provided services in the EVV program, and the beneficiary/participant making an entry verifying that the PDW provided the services. If an EVV entry cannot be created, Consumer Direct will accept a paper timesheet. Although the EVV system does not contain an explicit statement that the PDW is certifying that the services were provided under penalty of law (such as the statement that appears on Consumer Direct's paper timesheets), each PDW and beneficiary/participant must sign an Agreement that references penalties for submitting false information.

19.     TAMJONG's fraudulent claims are too numerous to recite in this Affidavit. However, for purposes of establishing probable cause, the exemplars set forth below demonstrate, but are not exhaustive of, the fraud TAMJONG committed against D.C. Medicaid.

### A.     BILLING FOR SERVICES WHILE TRAVELING OUTSIDE THE COUNTRY

20.     The investigation revealed that TAMJONG caused Medicaid to pay approximately $70,100 for 13,652 units (3,413 hours) of personal care aide services that he purported to provide to six beneficiaries between 2016 and 2022 when he actually was traveling outside the District of Columbia.

21.     On April 10, 2016, TAMJONG departed the United States on a flight from Dulles International Airport (IAD) to Brussels Airport in Belgium.  He returned to the United States on a May 10, 2016 flight from Brussels Airport to IAD. For that one-month period, TAMJONG's fraudulent timesheets, wherein he purported to provide PCA services while he was out of the country, resulted in three separate HHAs (HHA-1, HHA-2, and HHA-3) billing Medicaid for PCA services that TAMJONG claimed he provided to participants/beneficiaries B1, B5, and B4.[3] As a result, Medicaid ended up issuing payments totaling $9,959.68 to HHA-1, HHA-2, and HHA-3 for 1,984 units (496 hours) of PCA services that were not provided.

22.     On December 03, 2016, TAMJONG departed the United States on a flight from IAD to Brussels Airport.  He returned to the United States on a February 28, 2017 flight from Brussels Airport to IAD. TAMJONG's fraudulent timesheets for that 88-day period showed him once again purporting to provide PCA services when he was not in the country. As a result, three HHAs (HHA-1, HHA-3, and HHA-6) billed Medicaid for PCA services that TAMJONG claimed

---

[3] I have reviewed timesheets for B1 and B4. The government does not have timesheets for B5.

he provided to B1, B4, and B9. [4] Medicaid issued payments totaling $18,825.76 to the three HHAs for a total of 3,736 units (934 hours) of PCA services that TAMJONG did not provide.

23.     On July 14, 2017, TAMJONG departed the United States on a flight from IAD to Brussels Airport.  He returned to the United States on an August 19, 2017 flight from Istanbul, Turkey to IAD. TAMJONG's fraudulent timesheets for that 37-day period showed him providing PCA services to B4 and B1 on behalf of HHA-3 and HHA-1. Medicaid issued payments totaling $7,756.80 to HHA-3 and HHA-1 for a total of 1,536 units (384 hours) of services that TAMJONG did not provide.

24.     On July 9, 2018, TAMJONG departed the United States on a flight from IAD to Brussels. He returned on an August 14, 2018 flight from Brussels to IAD. TAMJONG's fraudulent timesheets for that 37-day period showed him providing PCA services to B4 and B2 on behalf of HHA-3 and HHA-2.  Medicaid issued payments totaling approximately $4,975 to the HHAs for a total of 968 units (242 hours) of PCA services that TAMJONG did not provide.

25.     On February 6, 2019, TAMJONG flew from IAD to Atlanta, Georgia. On February 7, 2019, he left the United States on a flight from Atlanta to Paris, France.  He returned to the United States on a February 14, 2019 flight from Paris to IAD.  TAMJONG's fraudulent timesheets for that nine-day period showed him providing PCA services to B4, B1, and B2 on behalf of HHA-3, HHA-1, and HHA-2. Medicaid issued payments totaling $2,730 to the HHAs for a total of 520 units (130 hours) of PCA services that TAMJONG falsely claimed to provide.

26.     On September 26, 2019, TAMJONG flew from IAD to Brussels. He returned to the United States on an October 25, 2019 flight from Brussels to IAD. TAMJONG's fraudulent timesheets for that 29-day period showed him providing PCA services to B2 and B4 on behalf of

---

[4] I have reviewed timesheets for B1 and B4. The government does not have timesheets for B9.

8

HHA-2 and HHA-3. Medicaid issued payments totaling $3,966.48 to the HHAs for a total of 752 units (188 hours) of PCA services that TAMJONG falsely claimed to provide.

27.     On May 4, 2021, TAMJONG traveled from IAD to Addis Ababa Bole International Airport in Ethiopia.  He returned to the United States on a June 12, 2021, flight from Dublin, Ireland, to IAD.  TAMJONG's fraudulent timesheets for that 40-day period showed him providing personal care aid services as a PDW for B2 and B3 in connection with the *Services My Way* program. Consumer Direct DC caused Medicaid to be billed for 2,720 units (680 hours) of services that TAMJONG purportedly provided. As a result, Medicaid issued payments totaling approximately $14,315.

28.     On December 16, 2021, TAMJONG traveled from IAD to Cairo, Egypt. On January 15, 2022, TAMJONG returned to the United States on a flight from Cairo to IAD. TAMJONG's fraudulent timesheets for that 31-day period showed him once again purporting to provide personal care aide services as a PDW for B2 and B3 in connection with the *Services My Way* program. Consumer Direct DC caused Medicaid to be billed for 1436 units (359 hours) of services that TAMJONG purportedly provided. As a result, Medicaid issued payments totaling approximately $7,571.

### B.     BILLING EXCEEDING 16 HOURS IN A GIVEN DAY AND OVERLAPPING HOURS OF CARE

29.     A review of D.C. Medicaid claims data revealed that there were 742 days between approximately December 1, 2014 and December 25, 2021, where TAMJONG purportedly provided over 16 hours of PCA services to Medicaid beneficiaries. On 156 of those occasions, TAMJONG caused D.C. Medicaid to be billed for 24 hours of services allegedly provided in one day. D.C. Medicaid paid HHAs and Consumer Direct DC approximately $283,252.02 on TAMJONG's behalf for the 742 days of billing in excess of 16 hours per day. On each of the days

for which TAMJONG purportedly worked for 16 hours, TAMJONG claimed to provide services for at least two different beneficiaries each day and often on behalf of at least two different HHAs, occasionally during overlapping hours. Medicaid prohibits PCAs from providing services to more than one beneficiary at a time.

30.      For example, from June 14, 2020 through June 20, 2020, TAMJONG caused Medicaid to be billed $2,475.27 by HHA-2, HHA-3, and Consumer Direct DC for personal care aide services that he purportedly provided to three beneficiaries over those seven days. The week of billing totaled 480 units (or 120 hours) of care across seven days even though there are only 672 units (or 168 hours) in a seven-day period. The timesheets submitted by TAMJONG show overlapping hours of service between two beneficiaries on Sunday and Saturday. Table 1 summarizes the entries from TAMJONG's timesheets and the corresponding Medicaid data.

**TABLE 1**

| DATE / BENEFICIARY | HOME HEALTH AGENCY | TIME IN | TIME OUT | UNITS PAID | HOURS | $ PAID |
|---|---|---|---|---|---|---|
| **SUNDAY 6/14/2020** | | | | **70** | **17.5** | **$    361.96** |
| B3 | Consumer Direct DC | 6:00 AM | 7:30 AM | 38 | 9.5 | $    191.40 |
| | | 3:30 PM | 11:30 PM | | | |
| B4 | HHA-3 | 8:00 AM | 4:00 PM | 32 | 8 | $    170.56 |
| **MONDAY 6/15/2020** | | | | **68** | **17** | **$    350.27** |
| B3 | Consumer Direct DC | 3:00 PM | 12:00 AM | 36 | 9 | $    181.31 |
| B2 | HHA-2 | 7:00 AM | 3:00 PM | 32 | 8 | $    168.96 |
| **TUESDAY 6/16/2020** | | | | **68** | **17** | **$    350.27** |
| B3 | Consumer Direct DC | 3:00 PM | 12:00 AM | 36 | 9 | $    181.31 |
| B2 | HHA-2 | 7:00 AM | 3:00 PM | 32 | 8 | $    168.96 |
| **WEDNESDAY 6/17/2020** | | | | **68** | **17** | **$    350.27** |
| B3 | Consumer Direct DC | 3:00 PM | 12:00 AM | 36 | 9 | $    181.31 |
| B2 | HHA-2 | 7:00 AM | 3:00 PM | 32 | 8 | $    168.96 |
| **THURSDAY 6/18/2020** | | | | **68** | **17** | **$    350.27** |
| B3 | Consumer Direct DC | 3:00 PM | 12:00 AM | 36 | 9 | $    181.31 |
| B2 | HHA-2 | 7:00 AM | 3:00 PM | 32 | 8 | $    168.96 |
| **FRIDAY 6/19/2020** | | | | **68** | **17** | **$    350.27** |
| B3 | Consumer Direct DC | 3:00 PM | 12:00 AM | 36 | 9 | $    181.31 |
| B2 | HHA-2 | 7:00 AM | 3:00 PM | 32 | 8 | $    168.96 |
| **SATURDAY 6/20/2020** | | | | **70** | **17.5** | **$    361.96** |
| B3 | Consumer Direct DC | 6:00 AM | 7:30 AM | 38 | 9.5 | $    191.40 |
| | | 3:30 PM | 11:30 PM | | | |
| B4 | HHA-3 | 8:00 AM | 4:00 PM | 32 | 8 | $    170.56 |
| **Grand Total** | | | | **480** | **120** | **$    2,475.27** |
| | | | | | | * 168 hours in one week |

10

## C.    BILLING FOR SERVICES NOT RENDERED

31.    On December 7, 2020, law enforcement conducted physical surveillance of TAMJONG. At 7:00 AM, law enforcement identified two vehicles commonly used by TAMJONG present in the driveway of his residence in Lanham, Maryland. At approximately 10:30 AM, one of the vehicles departed the residence. The vehicle returned to the residence at approximately 12:48 PM, at which time TAMJONG exited the vehicle with a package and entered the residence. At 3:00 PM, surveillance was terminated. Law enforcement did not observe TAMJONG leave the residence between 12:48 PM and 3:00 PM. A Consumer Direct DC timesheet showed TAMJONG purporting to provide personal care services to B2 between 6:00 AM and 2:00 PM that day as part of the *Services My Way* program. Consumer Direct DC billed Medicaid for eight hours of PCA services that TAMJONG purportedly provided to B2 that day.

32.    On December 29, 2020, law enforcement conducted physical surveillance of TAMJONG. At 7:26 AM, law enforcement arrived in the vicinity of TAMJONG's home residence and identified the three vehicles commonly present at the residence parked in the driveway and on the street by the residence. At approximately 10:50 AM, one of the vehicles departed TAMJONG's residence. At approximately 10:53 AM, the vehicle stopped at a gas station and TAMJONG exited the vehicle. At approximately 10:55 AM, TAMJONG returned to the vehicle and departed the gas station. Visual on the vehicle was lost. At approximately 12:46 PM, the vehicle arrived at TAMJONG's home residence. TAMJONG exited the vehicle and entered the residence and surveillance was terminated. Once again, a Consumer Direct DC timesheet showed TAMJONG purporting to provide personal care services to B2 between 6:00 AM and 2:00 PM that day as part of the *Services My Way* program. Consumer Direct DC billed Medicaid for eight hours of PCA services that TAMJONG purportedly provided to B2 that day.

33.     On March 28, 2021, law enforcement conducted physical surveillance of TAMJONG. At 7:35 AM, law enforcement identified TAMJONG's three vehicles present at his residence. Law enforcement retained a visual on the three vehicles, which remained at the residence, until 2:00pm. A Consumer Direct DC timesheet showed TAMJONG purporting to provide personal care services to B2 between 6:00 AM and 2:00 PM that day as part of the *Services My Way* program. Consumer Direct DC billed Medicaid for eight hours of PCA services purportedly that TAMJONG purportedly provided to B2 that day.

34.     On June 21, 2021, law enforcement conducted physical surveillance of TAMJONG. At 7:00 AM, law enforcement arrived in the vicinity of TAMJONG's home residence and identified the three vehicles commonly present at TAMJONG's home residence parked in the driveway and on the street. At approximately 9:44 AM, TAMJONG departed the residence. At approximately 10:15 AM, TAMJONG arrived in the vicinity of B2's residence. At approximately 10:31 AM, TAMJONG went up to the front door of B2's residence complex.  At approximately 10:37 AM, TAMJONG returned to his vehicle. At 10:46 AM, TAMJONG departed the vicinity of B2's residence and law enforcement lost visual on him.  At approximately 11:44 AM, law enforcement arrived back in the vicinity of TAMJONG's residence. At approximately 1:30 PM, TAMJONG arrived back at his residence. At 2:56 PM, all three vehicles were present at TAMJONG's residence. At approximately 3:00 PM, surveillance was terminated. A Consumer Direct DC timesheet showed TAMJONG purporting to provide personal care services to B2 between 6:00 AM and 2:00 PM that day as part of the *Services My Way* program. Consumer Direct DC billed Medicaid for eight hours of PCA services that TAMJONG purportedly provided to B2 that day.

35.     On the morning of June 15, 2021, law enforcement interviewed B2. B2 told law enforcement the following. TAMJONG is his/her current PCA and he has been his/her PCA for

approximately four years. TAMJONG provides services seven days a week, eight hours a day. TAMJONG comes anywhere between 7:30 AM and 8:00 AM and stays until 2:00 PM. Previously TAMJONG would come at 3:00 PM and stay until 11:00 PM. When law enforcement inquired as to the current whereabouts of TAMJONG, B2 told law enforcement that he/she had contacted TAMJONG and asked him to come at 2:00 PM instead. B2 would sign the timesheets for TAMJONG but said he/she could not tell what it said, he/she would just initial it. A Consumer Direct DC timesheet showed TAMJONG purporting to provide personal care services to B2 between 6:00 AM and 2:00 PM that day as part of the *Services My Way* program. Consumer Direct billed Medicaid for eight hours of PCA services purportedly provided by TAMJONG that day. D.C. Medicaid issued payments totaling approximately $176,736.15 to HHA-2 and Consumer Direct DC for PCA Services TAMJONG purportedly provided to B2 between 2017 and 2021.

36.    On July 16, 2021, law enforcement interviewed B1. B1 told law enforcement the following. He/she remembered having a PCA named JOSEPH for one year. B1 recognized the known photo of TAMJONG shown to him/her by law enforcement as his/her former PCA. B1 stated that TAMJONG would provide services on Mondays, Wednesdays, and Fridays. B1 signed blank timesheets for TAMJONG on Fridays. B1 stated that TAMJONG would not provide services on Christmas holidays. Claims data showed TAMJONG purporting to provide PCA services to B1 almost every day between November 2015 and September 2019, including on Christmas Day in 2015, 2016, 2017, and 2018. D.C. Medicaid issued payments totaling approximately $194,851.28 to HHA-1 for PCA services TAMJONG purported to provide to B1 between 2015 and 2019.

37.    On April 1, 2022, law enforcement interviewed B4 at his/her residence who reported the following. B4 said that he/she has home health aides. Law enforcement showed B4 a known photograph of TAMJONG. B4 recognized the person in the photo; he/she knew him as JOSEPH. TAMJONG was B4's previous home health aid from HHA-3. TAMJONG worked only

on the weekends and stayed for eight hours each day. TAMJONG typically came around 10:00 AM but was supposed to arrive at 9:00 AM.  At one point, TAMJONG disappeared; he just stopped coming to B4's residence. B4 notified HHA-3 and was assigned a new home health aide. TAMJONG would bring timesheets for B4 to sign on Sundays. The timesheets were completely blank, with no times or dates filled, and B4 would simply sign at the bottom. TAMJONG never brought more than the current weekend timesheets to sign, and never asked him/her to sign numerous timesheets or told him/her that he had lost timesheets and needed B4 to sign again. B4 was not aware that someone was charging his/her Medicaid fraudulently and did not receive any money from TAMJONG.

### D.   RECEIPT OF PAYMENT FOR SERVICES NOT RENDERED

38.   TAMJONG's D.C. wage history report and records obtained from HHA-1 show him earning the following wages from 2015 through the first quarter of 2021 for employment as a PCA/PDW.

**TABLE 2**

| HHA | QUARTER | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| HHA-1 | Q1-Q4 | | $ 41,127 | $ 41,555 | $ 35,594 | $ 33,867 | | | |
| | | | $ 41,127 | $ 41,555 | $ 35,594 | $ 33,867 | | | $ 152,141 |
| HHA-2 | Q1 | $ - | $ 7,195 | $ - | $ 5,437 | $ 5,635 | $ 6,004 | $ - | |
| | Q2 | $ - | $ 6,426 | $ 5,803 | $ 5,623 | $ 5,655 | $ 7,735 | $ - | |
| | Q3 | $ - | $ - | $ 4,240 | $ 5,538 | $ 5,655 | $ 7,889 | $ - | |
| | Q4 | $ - | $ - | $ 7,086 | $ 5,538 | $ 5,655 | $ 1,560 | $ - | |
| | | $ - | $ 13,621 | $ 17,129 | $ 22,136 | $ 22,600 | $ 23,188 | | $ 98,674 |
| HHA-3 | Q1 | $ - | $ - | $ 2,898 | $ 3,172 | $ 3,238 | $ 3,280 | $ - | |
| | Q2 | $ - | $ - | $ 3,124 | $ 2,726 | $ 2,784 | $ 2,976 | $ - | |
| | Q3 | $ - | $ - | $ 3,124 | $ 3,180 | $ 3,248 | $ 3,556 | $ - | |
| | Q4 | $ - | $ - | $ 2,455 | $ 2,726 | $ 2,784 | $ 888 | $ - | |
| | | | | $ 11,601 | $ 11,804 | $ 12,054 | $ 10,700 | | $ 46,159 |
| HHA-5 | Q1 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q2 | $ 5,288 | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q3 | $ 10,432 | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q4 | $ 3,201 | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | $ 18,921 | | | | | | | $ 18,921 |
| HHA-7 | Q1 | $ 9,246 | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q2 | $ 193 | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q3 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q4 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | $ 9,439 | | | | | | | $ 9,439 |
| B2 (SMW) | Q1 | $ - | $ - | $ - | $ - | $ - | $ - | $ 12,656 | |
| | Q2 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q3 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q4 | $ - | $ - | $ - | $ - | $ - | $ 11,340 | $ - | |
| | | | | $ - | $ - | $ - | $ 11,340 | $ 12,656 | $ 23,996 |
| B3 (SMW) | Q1 | $ - | $ - | $ - | $ - | $ - | $ - | $ 14,415 | |
| | Q2 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Q3 | $ - | $ - | $ - | $ - | $ - | $ 17,883 | $ - | |
| | Q4 | $ - | $ - | $ - | $ - | $ - | $ 14,527 | $ - | |
| | | | | $ - | $ - | $ - | $ 32,410 | $ 14,415 | $ 46,825 |
| TOTAL | | $ 28,360 | $ 54,748 | $ 70,285 | $ 69,534 | $ 68,521 | $ 77,638 | $ 27,071 | $ 396,155 |

## E.   CONCLUSION

39.   Based on the foregoing facts and information gathered thus far in the investigation, I submit that there is probable cause that from in or about December 2014 through at least March 2022, TAMJONG committed Health Care Fraud, in violation of 18 U.S.C. § 1347, and Health Care False Statements, in violation of 18 U.S.C. § 1035.

_____
Special Agent Kathleen Graham
Federal Bureau of Investigation

Subscribed and sworn telephonically pursuant to Fed. R. Crim. P. 4.1. on June 28, 2022.

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

16